KATHERINE V.A. SMITH, SBN 247866
  ksmith@gibsondunn.com
LAUREN M. BLAS, SBN 296823
  lblas@gibsondunn.com
HELEN AVUNJIAN, SBN 300284
  havunjian@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

KATIE M. MAGALLANES, SBN 300277
  kmagallanes@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA: 92612-4412
Telephone: 949.451.3800
Facsimile: 949.451.4220

Attorneys for Defendant
AMAZON.COM SERVICES LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| DAMARIS ROMAN and JONNIE CORINA III, individually and on behalf of other persons similarly situated,<br><br>            Plaintiffs,<br><br>   v.<br><br>AMAZON.COM SERVICES, LLC, a Delaware limited liability company; and DOES 1-50, inclusive,<br><br>            Defendants. | CASE NO.<br><br>**DEFENDANT AMAZON.COM SERVICES LLC'S NOTICE OF REMOVAL OF CLASS ACTION**<br><br>(Kern County Superior Court Case No. BCV-21-100433)<br><br>Action Filed: February 26, 2021<br>Trial Date: None Set |

# TABLE OF CONTENTS

Page

I. TIMELINESS OF REMOVAL ................................................................................................ 1

II. SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL ............................... 1

    A. The Proposed Class Consists of More Than 100 Members .......................................... 3

    B. Amazon and Plaintiffs Are Not Citizens of the Same State .......................................... 6

    C. The Amount in Controversy Exceeds $5 Million .......................................................... 7

        1. Plaintiffs' Allegations Regarding Waiting Time Penalties *Alone* Establish That the Amount in Controversy Exceeds $5 Million ....................... 8

        2. Plaintiffs' Request for Attorneys' Fees Alone Places Another $1,612,143 in Controversy ................................................................................. 11

        3. In Total, Just One of Plaintiffs' Three Causes of Action, Including Attorneys' Fees, Places More Than $8 Million in Controversy ..................... 12

III. THIS COURT HAS JURISDICTION AND REMOVAL TO THIS COURT IS PROPER ................................................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Arias v. Residence Inn by Marriott*,
   936 F.3d 920 (9th Cir. 2019) ................................................................................... 4, 8, 9, 11

*Avila v. Kiewit Corp.*,
   789 F. App'x 32 (9th Cir. 2019) ............................................................................................ 6

*Ayala v. Cox Auto., Inc.*,
   2016 WL 6561284 (C.D. Cal. Nov. 4, 2016) ........................................................................ 6

*Barcia v. Contain-A-Way, Inc.*,
   2009 WL 587844 (S.D. Cal. Mar. 6, 2009) ......................................................................... 11

*Booth v. Appstack, Inc.*,
   2016 WL 3030256 (W.D. Wash. May 25, 2016) .................................................................. 4

*Branch v. PM Realty Grp., L.P.*,
   647 F. App'x 743 (9th Cir. 2016) .......................................................................................... 5

*Campbell v. Vitran Exp., Inc.*,
   471 F. App'x 646 (9th Cir. 2012) .......................................................................................... 8

*Crummie v. CertifiedSafety, Inc.*,
   2017 WL 4544747 (N.D. Cal. Oct. 11, 2017) ..................................................................... 10

*Danielsson v. Blood Centers of Pac.*,
   2019 WL 7290476 (N.D. Cal. Dec. 30, 2019) .................................................................. 5, 6

*Dart Cherokee Basin Op. Co. v. Owens*,
   574 U.S. 81 (2014) .............................................................................................................. 7, 8

*Ehrman v. Cox Commc'ns, Inc.*,
   932 F.3d 1223 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2566 (2020) .................................. 6

*Guglielmino v. McKee Foods Corp.*,
   506 F.3d 696 (9th Cir. 2007) ............................................................................................... 12

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................................................. 11

*Hertz Corp. v. Friend*,
   559 U.S. 77 (2010) ................................................................................................................ 7

*Howard v. CVS Caremark Corp.*,
   2014 WL 11497793 (C.D. Cal. Dec. 19, 2014), *aff'd*, 628 F. App'x 537 (9th Cir. 2016) .............. 4

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Johnson v. Columbia Props. Anchorage, LP*,
 437 F.3d 894 (9th Cir. 2006)..................................................................................................7

*Kamar v. RadioShack Corp.*,
 375 F. App'x 734 (9th Cir. 2010) ..........................................................................................4

*Kantor v. Wellesley Galleries, Ltd.*,
 704 F.2d 1088 (9th Cir. 1983)................................................................................................6

*Korn v. Polo Ralph Lauren Corp.*,
 536 F. Supp. 2d 1199 (E.D. Cal. 2008)..................................................................................8

*LaCross v. Knight Transp. Inc.*,
 775 F.3d 1200 (9th Cir. 2015)................................................................................................7

*Lewis v. Verizon Commc'ns, Inc.*,
 627 F.3d 395 (9th Cir. 2010)..................................................................................................8

*Mamika v. Barca*,
 68 Cal. App. 4th 487 (1998)...................................................................................................9

*Marentes v. Key Energy Servs. Cal., Inc.*,
 2015 WL 756516 (E.D. Cal. Feb. 23, 2015) ........................................................................10

*Pineda v. Bank of Am., N.A.*,
 50 Cal. 4th 1389 (2010) .......................................................................................................10

*Salter v. Quality Carriers, Inc.*,
 974 F.3d 959 (9th Cir. 2020)..................................................................................................8

*Sanders v. Old Dominion Freight Line, Inc.*,
 2018 WL 1193836 (S.D. Cal. Mar. 8, 2018) .........................................................................5

*Std. Fire Ins. Co. v. Knowles*,
 568 U.S. 588 (2013)................................................................................................................8

*Tajonar v. Echosphere, L.L.C.*,
 2015 WL 4064642 (S.D. Cal. July 2, 2015) ..........................................................................9

*Vasquez v. Randstad US, L.P.*,
 2018 WL 327451 (N.D. Cal. Jan. 9, 2018) ............................................................................4

**STATUTES**

28 U.S.C. § 84(c) ........................................................................................................................13

28 U.S.C. § 1332................................................................................................................1, 2, 3, 6, 7

# TABLE OF AUTHORITIES
(continued)

Page(s)

28 U.S.C. § 1441 ............................................................................................................. 1, 3, 13

28 U.S.C. § 1446 ................................................................................................................ 1, 13

28 U.S.C. § 1453 ........................................................................................................................ 1

Cal. Civ. Proc. Code § 382 ................................................................................................. 1, 10

Cal. Lab. Code § 201 ............................................................................................................ 9, 10

Cal. Lab. Code § 202 ............................................................................................................ 9, 10

Cal. Lab. Code § 203 ....................................................................................................... 3, 9, 10

**REGULATIONS**

29 C.F.R. § 778.211 ..................................................................................................................... 4

Cal. Code Regs. tit. 8, § 13520 ................................................................................................... 9

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFFS DAMARIS ROMAN AND JONNIE CORINA III AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, and 1711, Defendant Amazon.com Services LLC ("Amazon") hereby removes to the United States District Court for the Eastern District of California the above-captioned state court action, originally filed as Case No. BCV-21-100433 in Kern County Superior Court, State of California. Removal is proper on the following grounds:

## I.   TIMELINESS OF REMOVAL

1. Plaintiffs Damaris Roman and Jonnie Corina III ("Plaintiffs") filed a putative Class Action Complaint against Amazon.com Services LLC in Kern County Superior Court, State of California, Case No. BCV-21-100433, on February 26, 2021. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the (a) Summons, (b) Class Action Complaint, (c) Civil Case Cover Sheet, (d) Notice of Assignment to Judge for All Purposes and Notice of Order to Show Cause Re CRC Rule 3.110 and Notice of Case Management Conference, (e) Notice of Service of Process Transmittal, and (f) Proof of Service of Summons are attached as Exhibits A–F to the Declaration of Katherine V.A. Smith ("Smith Decl.") filed concurrently here.

2. According to the Notice of Service of Process, Plaintiffs personally served Amazon through its registered agent for service of process on March 23, 2021. *See* Smith Decl. ¶ 6, Exs. E–F. Consequently, service was completed on March 23, 2021. This notice of removal is timely because it is filed within 30 days after service was completed. 28 U.S.C. § 1446(b).

## II.   SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL

3. Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1453 because this Court has subject matter jurisdiction over this action and all claims asserted against Amazon pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

4. CAFA applies "to any class action before or after the entry of a class certification order by the court with respect to that action." 28 U.S.C. § 1332(d)(8). This case is a putative "class action" under CAFA because it was brought under California Code of Civil Procedure § 382, California's state

statute or rule authorizing an action to be brought by one or more representative persons as a class action. *See* 28 U.S.C. § 1332(d)(1)(B); *see also* Smith Decl., Ex. B, Compl. ¶ 1.

5. Plaintiffs request "[a]n order that the action be certified as a class action." Smith Decl., Ex. B, Compl., Prayer for Relief. Plaintiffs seek to represent three classes: (1) "[a]ll current and former non-exempt employees of [Amazon] in California who used paid sick leave within the four years preceding the filing of the Complaint . . . and either (a) earned some form of non-discretionary wages in addition to base hourly wages (including but not limited to shift differentials and non-discretionary incentive bonuses) for the workweek in which the employee used the paid sick leave or (b) earned some form of non-discretionary wages in addition to base hourly wages (including but not limited to shift differentials and non-discretionary incentive bonuses) for the full pay periods of the 90 days prior to the employee's use of the paid sick leave" ("Paid Sick leave Class"); (2) "[a]ll current and former non-exempt employees of [Amazon] in California for whom [Amazon's] payroll records show they earned base hourly wages, additional non-discretionary wages (including but not limited to shift differentials and non-discretionary incentive bonuses), and meal period and/or rest period premium wages during the same pay period at any time during the four years preceding the filing of the Complaint " ("Break Premium Class"); and (3) "[m]embers of the Paid Sick Leave Class and members of the Break Premium Class whose employment by [Amazon] ended during the three years preceding the filing of the Complaint" ("Waiting Time Penalty Class"). *Id.*, Compl. ¶¶ 21(a)–(c).

6. Plaintiffs allege three causes of action against Amazon: (1) Failure to Pay All Premium Wages; (2) Failure to Pay All Wages Due and Owing on Separation from Employment; and (3) Unfair Business Practices.

7. Among other things, Plaintiffs allege that putative class members are entitled to unpaid wages, waiting time penalties, and attorneys' fees and costs. *See id.*, Compl., Prayer for Relief. Specifically, Plaintiffs' theory of the case centers on their allegations that Amazon "failed to include . . . non-discretionary remuneration . . . when determining the 'regular rate of pay' for Plaintiffs and [putative class members] for purposes of sick time pay" and "paid Plaintiffs and [putative class members] one hour of pay at their base hourly rates when compensating . . . employees for violations of the meal and rest period requirements, including in periods when the employees earned shift

differentials and other forms of remuneration required to be factored into an employee's regular rate of compensation." *See id.*, Compl. ¶¶ 17, 19.  Plaintiffs further allege that this purportedly routine underpayment of sick wages and break premiums requires Amazon to, pursuant to Labor Code section 203, pay thirty days of waiting time penalties to Plaintiffs and all former non-exempt Amazon employees who were discharged or terminated between February 26, 2018 and the present, if that former employee ever (a) received sick pay in the same "workweek in which" the employee "earned some form of non-discretionary wages" or (b) "earned base hourly wages, additional non-discretionary wages . . . and meal period and/or rest period premium wages during the same pay period." *See id.* ¶¶ 21(a)–(c), 39–45.

8. Removal of a class action is proper if:  (1) there are at least 100 members in the putative class; (2) there is minimal diversity between the parties, such that at least one class member is a citizen of a state different from any defendant; and (3) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.  *See* 28 U.S.C. §§ 1332(d), 1441.

9. Amazon denies any liability in this case, both as to Plaintiffs' individual claims and as to their putative class claims.  Amazon also intends to oppose class certification on multiple grounds and believes that class treatment is inappropriate under these circumstances, in part because there are many material differences between the named Plaintiffs and the putative class members Plaintiffs seek to represent, as well as amongst the putative class members.  Amazon expressly reserves all rights to oppose class certification and to contest the merits of all claims asserted in the Complaint.  However, for purposes of the jurisdictional requirements *for removal only*, the allegations in Plaintiffs' Complaint identify a putative class of more than 100 members and put in controversy, in the aggregate, an amount that exceeds $5 million. *See id.*, § 1332(d).

**A.  The Proposed Class Consists of More Than 100 Members**

10. Based on Plaintiffs' allegations, this action satisfies CAFA's requirement that the putative class action contains at least 100 members.  *See* 28 U.S.C. § 1332(d)(5)(B).

11. One of Plaintiffs' proposed classes includes "[a]ll current and former non-exempt employees of [Amazon] in California who used sick leave [and] earned some form of non-discretionary wages in addition to base hourly wages (including but not limited to shift differentials and non-

discretionary incentive bonuses) for the workweek in which the employee used the paid sick leave" and/or employees "for whom [Amazon's] payroll records show they earned base hourly wages, additional non-discretionary wages (including but not limited to shift differentials and non-discretionary incentive bonuses), and meal period and/or rest period premium wages during the same period" and "whose employment by [Amazon] ended during the three years preceding the filing of the Complaint" through the present.  Smith Decl., Ex. B, Compl. ¶¶ 21(a)–(c).

12. As a preliminary matter, this putative class is pleaded as a fail-safe class because it is "defined in a way that precludes membership unless the liability of the defendant is established." *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010); *see also Booth v. Appstack, Inc.*, 2016 WL 3030256, at *9 (W.D. Wash. May 25, 2016) (noting that the court "removed the phrase[s]" from the class definition that made the classes "fail safe" to avoid the due process and management problems associated with those types of classes); *Howard v. CVS Caremark Corp.*, 2014 WL 11497793, at *3 (C.D. Cal. Dec. 19, 2014), *aff'd*, 628 F. App'x 537 (9th Cir. 2016) (discussing "obvious problems" associated with fail-safe class definitions).  Whether employees were paid "nondiscretionary remuneration" in a given workweek is a legal determination that can only be made by the Court or ultimate factfinder.  *See* 29 C.F.R. § 778.211 (discussing various factors to be considered in determining whether a bonus, for example, is discretionary or nondiscretionary, including whether it was promised in advance or in the nature of a gift).  It is well established that Amazon does *not* need to "prove it actually violated the law" to establish this Court's jurisdiction under CAFA.  *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019).  Thus, Amazon need not prove precisely how many employees were purportedly "underpaid" sick pay and/or meal and/or rest-period premium wages nor must it agree at this stage that any particular sum was non-discretionary.  Instead, Amazon need only show that the allegations of the Complaint support a reasonable assumed violation rate.  *Id*. at 925 ("[A] removing defendant is permitted to rely on 'a chain of reasoning that includes assumptions' . . . founded on the allegations of the complaint."); *see also Vasquez v. Randstad US, L.P.*, 2018 WL 327451, at *5 (N.D. Cal. Jan. 9, 2018) (upholding a 100% violation rate for a meal period claim where, plaintiff alleged that the defendant "consistently" and "regularly" committed the alleged violations).

13. According to Amazon's data, there were at least 10,383 full-time, non-exempt individuals employed by Amazon in California who resigned or were terminated and received sick pay and/or a break premium between February 26, 2018 to February 26, 2021. Declaration of Denicia "JP" Prather ("Prather Decl.") ¶ 3(a). Plaintiffs allege that Amazon "only paid Plaintiffs and other [putative class] members . . . sick leave" and meal and rest break "premium wages . . . at their base hourly rate" instead of "at their regular rate of pay" despite that "employees earned shift differentials and other forms of remuneration required to be factored into an employee's regular rate of compensation." *See* Smith Decl., Ex. B, Compl. ¶¶ 17, 19. Thus, if Amazon were to assume that only one in four of these full-time, non-exempt employees earned some "form[] of remuneration required to be factored into [their] regular rate of compensation" during just a single workweek in which these employees also received sick pay and/or break premiums, Plaintiffs' putative Waiting Time Penalty Class would encompass at least 2,595 individuals. *See Sanders v. Old Dominion Freight Line, Inc.*, 2018 WL 1193836, at *6 (S.D. Cal. Mar. 8, 2018) (finding "a 100% violation rate . . . reasonable" where complaint sought waiting time "penalties for all employees who terminated employment"); *Branch v. PM Realty Grp., L.P.*, 647 F. App'x 743, 745–46 (9th Cir. 2016) (holding "extrapolated violation rate" of two meal period violations per week was reasonable where plaintiff stated in a declaration that he and the putative class "frequently" had breaks interrupted); *Danielsson v. Blood Centers of Pac.*, 2019 WL 7290476, at *6 (N.D. Cal. Dec. 30, 2019) (finding assumption of "a 20% violation rate for meal and rest breaks during the putative class period" to be "reasonable given the allegations of a 'pattern and practice' of such violations").

14. This putative class size estimate is conservative because (a) it excludes part-time employees who may also earn non-discretionary remuneration and receive sick pay and/or break premiums, (b) it excludes both full-time and part-time non-exempt employees who have resigned or been terminated since February 26, 2021, and (c) it assumes only one in four full-time, non-exempt employees who resigned or were terminated between February 26, 2018 to February 26, 2021 earned non-discretionary remuneration in the same workweek as receiving some increment of sick pay and/or a break premium, and it assumes that such an occurrence only happened once. This assumption is much more conservative than assumptions frequently found reasonable in calculating the assumed

violation rate. *See, e.g.*, *Avila v. Kiewit Corp.*, 789 F. App'x 32, 33–34 (9th Cir. 2019) (reversing remand after finding that defendant demonstrated that "its assumptions in calculating the amount in controversy [were] 'reasonable,' because they [were] sufficiently grounded in the allegations of the Complaint and the evidence provided"); *Danielsson*, 2019 WL 7290476, at * 7 (explaining that a reasonable violation rate is based on "the nature of averages: even if a handful of class members may have experienced fewer violations than [d]efendant assumes, it is equally probable that other class members experienced more violations than [d]efendant assumed").

15. Accordingly, while Amazon denies that class treatment is permissible or appropriate, the proposed class consists of more than 100 members.

**B.   Amazon and Plaintiffs Are Not Citizens of the Same State**

16. Under CAFA's minimum diversity of citizenship requirement, the plaintiff or any member of the putative class must be a citizen of a different state from any defendant. *See* 28 U.S.C. § 1332(d)(2)(A).

17. A person is a citizen of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A party's residence is prima facie evidence of his or her domicile. *Ayala v. Cox Auto., Inc.*, 2016 WL 6561284, at *4 (C.D. Cal. Nov. 4, 2016) (citing *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994)). Plaintiff Roman alleges he "is a resident of Kern County, California." *See* Smith Decl., Ex. B, Compl. ¶ 6. Plaintiff Corina III alleges he "is a resident of Riverside County, California." *Id.*, Compl. ¶ 7. Plaintiffs are therefore considered citizens of California for purposes of removal under CAFA. *See Ayala*, 2016 WL 6561284, at *4. Moreover, it is reasonable to assume that a substantial number of the putative class members, whom by definition are or have been recently "employ[ed] . . . in California," are also domiciled in California. Smith Decl. Ex. B, Compl. ¶ 21; *see also Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1227 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2566 (2020) (holding that defendant's "short and plain statement alleging [plaintiff] and the putative class members were citizens of California" was "sufficient" to establish jurisdiction for removal under CAFA because "allegations of citizenship may be based solely on information and belief").

18. A corporation is a citizen of its state of incorporation and the state of its principal place of business. 28 U.S.C. § 1332(c)(1). "[A]n LLC is a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Amazon.com Services LLC is a limited liability company organized under the laws of Delaware and has its principal place of business in Seattle, Washington. Declaration of Zane Brown ("Brown Decl.") ¶ 2. Amazon.com, Inc. is the sole member of Amazon.com Services LLC and Amazon.com Services LLC is wholly owned by Amazon.com, Inc., which is a Delaware corporation with its principal place of business in Washington. *Id.*

19. The Supreme Court has interpreted the phrase "principal place of business" in 28 U.S.C. § 1332(c)(1) & (d)(2)(A) to mean "the place where a corporation's officers direct, control, and coordinate the corporation's activities," i.e., its "nerve center," which "should normally be the place where the corporation maintains its headquarters, provided that the headquarters is the actual center of direction, control, and coordination." *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010). Amazon.com Services LLC's and Amazon.com, Inc.'s headquarters, which are located in Washington, constitute their "nerve center[s]" under the test adopted in Hertz because their high-level officers oversee each corporation's activities from that state. *See* Brown Decl. ¶ 2. As such, Amazon.com Services LLC is a citizen of Delaware and Washington. *See* 28 U.S.C. § 1332(c)(1); *Johnson*, 437 F.3d at 899.

20. Accordingly, Plaintiffs and Amazon are citizens of different states and CAFA's minimal diversity requirement is met. 28 U.S.C. § 1332(d)(2)(A).

## C. The Amount in Controversy Exceeds $5 Million

21. CAFA requires that the amount in controversy in a class action exceed $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). In calculating the amount in controversy, a court must aggregate the claims of all individual class members. *Id.* § 1332(d)(6).

22. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Op. Co. v. Owens*, 574 U.S. 81, 89 (2014). To satisfy this burden, a defendant may rely on a "reasonable" "chain of reasoning" that is based on "reasonable" "assumptions." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201–02 (9th Cir. 2015). "An assumption may be reasonable if it is founded on the allegations

of the complaint." *Arias*, 936 F.3d at 925; *see also Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) ("[I]n *Arias* we held that a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements," quotations and citations omitted). That is because "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 574 U.S. at 87. Importantly, a plaintiff seeking to represent a putative class cannot "bind the absent class" through statements aimed to limit his recovery in an effort to "avoid removal to federal court." *Std. Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595–96 (2013).

23. Moreover, in assessing whether the amount in controversy requirement has been satisfied, "a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). In other words, the focus of the Court's inquiry must be on "what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (emphasis in original) (citing *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)).

24. Although Amazon denies that Plaintiffs' claims have any merit, Amazon avers, for the purposes of meeting the jurisdictional requirements for removal *only*, that if Plaintiffs were to prevail on every claim and allegation in their Complaint on behalf of the putative class, the requested monetary recovery would exceed $5 million.

**1.    Plaintiffs' Allegations Regarding Waiting Time Penalties *Alone* Establish That the Amount in Controversy Exceeds $5 Million**

25. Amazon reserves the right to present evidence establishing the amount placed in controversy by each of Plaintiffs' claims should Plaintiffs challenge whether the jurisdictional amount-in-controversy threshold is satisfied. *See Dart Cherokee*, 574 U.S. at 87–89; *see also Salter*, 974 F.3d

Gibson, Dunn & Crutcher LLP

8   DEFENDANT'S NOTICE OF REMOVAL OF CLASS ACTION

at 964 (holding that only a "factual attack" that "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings" requires the removing defendant to "support her jurisdictional allegations with competent proof," quotations and citations omitted).  "[W]hen a notice of removal plausibly alleges a basis for federal court jurisdiction, a district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are satisfied." *Arias*, 936 F.3d at 924.  But for present purposes, it is sufficient to note that Plaintiffs' claims regarding waiting time penalties alone place more than $5 million in controversy.

26.    If an employer fails to pay all wages due to an employee at the time of termination, as required by Labor Code Section 201, or within 72 hours after resignation, as required by Labor Code Section 202, then the wages "shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced," for up to a maximum of 30 calendar days.  Cal. Lab. Code § 203.  An employer may not be liable for these penalties if a good faith dispute exists as to whether the wages are owed.  Cal. Code Regs. tit. 8, § 13520.  Further, to be liable for waiting time penalties, an employer's failure to pay wages within the statutory time frame must be *willful*.  *See* Cal. Lab. Code § 203.  "A willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an employer *intentionally* fails to pay wages to an employee when those wages are due."  Cal. Code Regs., tit. 8, § 13520 (emphasis added).  According to Plaintiffs, a former non-exempt Amazon employee would be entitled to waiting time penalties pursuant to California Labor Code section 203 if that individual had one pay period where he or she received both sick pay and/or a break premium and other non-discretionary remuneration.  Smith Decl., Ex. B, Compl. ¶¶ 36–45.

27.    To calculate waiting time penalties, the employee's daily rate of pay is multiplied by the number of days the wages remained unpaid, up to a maximum of 30 days.  *See Mamika v. Barca*, 68 Cal. App. 4th 487, 493 (1998) (holding that the waiting time penalty is "equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days" and noting that the "critical computation" is "the calculation of a daily wage rate, which can then be multiplied by the number of days of nonpayment, up to 30 days"); *Tajonar v. Echosphere, L.L.C.*, 2015 WL 4064642, at *4 (S.D. Cal. July 2, 2015).  Where final "wages [due] are alleged to have not been paid, the full thirty-days

may be used for each of the putative class members." *Marentes v. Key Energy Servs. Cal., Inc.*, 2015 WL 756516, at *9 (E.D. Cal. Feb. 23, 2015); *see also Crummie v. CertifiedSafety, Inc.*, 2017 WL 4544747, at *3 (N.D. Cal. Oct. 11, 2017) (where a plaintiff alleges "putative class members were owed (and are still owed)" wages, it is "completely reasonable to assume waiting time penalties accrued to the thirty-day limit").

28. Plaintiffs allege that they and other putative class members who received sick pay and/or a break premium in the same week that they received non-discretionary remuneration and ended their employment with Amazon during at least the three-year period prior to filing this Complaint[1]—February 26, 2018 to February 26, 2021, *see* Smith Decl., Ex. B, Compl. ¶¶ 21(a)–(c)—are entitled to recovery of waiting time "penalties," pursuant to California Labor Code section 203, *id.* ¶¶ 36–45. Plaintiffs' claim for waiting time penalties is therefore derivative of their sick pay and break premium allegations, which they allege were the product of a Amazon's "policy and practice" to pay at the incorrect rate. *See id*. ¶¶ 17, 19, 32–35. Based on these allegations, it is reasonable to assume that Plaintiffs and the putative class would claim the "waiting time penalties accrued to the thirty-day limit." *See Crummie*, 2017 WL 4544747, at *3 (upholding thirty-day assumption based on allegations of a pattern or practice of withholding wages owed).

29. Under Plaintiffs' theory, an employee would be owed waiting time penalties if Amazon *just once* failed to accurately calculate sick pay and/or a break premium in a pay period in which the employee earned a bonus or incentive pay during the course of their employment with Amazon. According to Amazon's data, there were approximately 10,383 full-time, non-exempt individuals employed by Amazon in California who received sick pay and/or a break premium and resigned or were terminated between February 26, 2018 to February 26, 2021. Prather Decl. ¶ 3(a). The average hourly rate for those 10,383 employees during the operative three-year period was $13.81. *Id.* ¶ 3(b).

30. As discussed above, Amazon contends that Plaintiffs have improperly pled a fail-safe class such that Amazon need not determine, for purposes of removal, precisely how many employees received "nondiscretionary remuneration" in a workweek in which they also received sick pay and/or

---

[1] The statute of limitations for an action for final wages not timely paid under Labor Code sections 201 and 202 is three years. Cal. Civ. Proc. Code § 338(a); *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1398 (2010).

a break premium. *See supra* ¶ 12. Accordingly, for purposes of removal, Amazon uses a conservative estimate that only one in four prior full-time, non-exempt employees who resigned or were terminated between February 26, 2018 to February 26, 2021 had a single workweek in which they earned non-discretionary remuneration in the same workweek as receiving some increment of sick pay and/or a break premium.

31. If, under Plaintiffs' theory, one in four full-time, non-exempt individuals who left the employment of Amazon during the *three* years preceding the filing of the Complaint were undercompensated for sick pay and/or break premiums (which equates to 2,595 employees), the amount in controversy with respect to the waiting time penalties for full-time employees alone would be approximately **$6.4 million**, calculated as follows:

| | |
|---|---|
| $13.81 average hourly rate x 6 hours per day:[2] | $82.86 daily rate |
| $82.86 x 30 days maximum penalty: | $2,485 per employee |
| Amount in controversy for waiting time penalties, based on Plaintiffs' allegations ($2,485 x 2,595 employees): | **$6,448,575** |

### 2. Plaintiffs' Request for Attorneys' Fees Alone Places Another $1,612,143 in Controversy

32. Plaintiffs also explicitly seek attorneys' fees should they recover under any of the claims in this action. *See* Smith Decl., Ex. B, Compl., Prayer For Relief. Prospective attorneys' fees are properly included in the amount in controversy for purposes of evaluating CAFA jurisdiction. *See Arias*, 936 F.3d at 922 ("[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy."). Under the Ninth Circuit's well-established precedent, 25% of the common fund is generally used as a benchmark for an award of attorneys' fees. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Barcia v. Contain-A-Way, Inc.*, 2009 WL 587844, at *5 (S.D. Cal. Mar. 6, 2009) ("In wage

---

[2] Six hours per day is a conservative estimate given that these 2,595 putative class members were full-time employees. *See* Prather Decl. ¶ 3(a). This calculation does not include any waiting time penalties allegedly owed to part-time employees, which would further increase the amount in controversy.

and hour cases, '[t]wenty-five percent is considered a benchmark for attorneys' fees in common fund cases.'" (quoting *Hopson v. Hanesbrands Inc.*, 2008 WL 3385452 at *3 (N.D. Cal.2008)).

33. Here, Amazon has established that the amount in controversy on the waiting time penalties alone is at least $6.4 million, and Plaintiffs have not indicated that they will seek less than 25% of a common fund in attorneys' fees. *See* Smith Decl., Ex. B., Compl., Prayer For Relief (seeking attorneys' fees). Amazon denies that any such attorneys' fees are owed to Plaintiffs or putative class members, but relies on Plaintiffs' allegation that they will be entitled to attorneys' fees for purposes of this jurisdictional analysis. Although Amazon has shown that the amount in controversy without considering attorneys' fees surpasses the jurisdictional threshold, this Court should nevertheless include the potential attorneys' fees in evaluating jurisdiction. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007).

34. Using a 25% benchmark figure for attorneys' fees for Plaintiffs' allegations regarding alleged waiting time penalties results in estimated attorneys' fees of approximately **$1.6 million**, calculated as follows:

| | |
|---|---:|
| Conservative estimate of amount in controversy based on waiting time penalties: | $6,448,575 |
| Attorneys' fees benchmark: | 25% |
| Estimated attorneys' fees in controversy: | **$1,612,143** |

**3.   In Total, Just One of Plaintiffs' Three Causes of Action, Including Attorneys' Fees, Places More Than $8 Million in Controversy**

35. The amount in controversy figures set forth above are underinclusive of the actual amount placed in controversy by Plaintiffs' claims because they are based on conservative assumptions including, (i) limiting the number of employees who were allegedly undercompensated for sick pay and/or break premiums to only one in four *full-time*, non-exempt employees *who left their employment* with Amazon from February 26, 2018 to February 26, 2021, (ii) excluding from the estimate all part-time non-exempt employees for the entire relevant time period as well as any additional non-exempt employees who left Amazon's employ after February 26, 2021, and (iii) excluding any alleged damages for, among other things, recovery sought for Plaintiffs' remaining causes of action, including, alleged

failure to pay all premiums for meal and rest period violations (First Cause of Action) or unfair and unlawful business practices (Third Cause of Action).

36. Plaintiffs' allegations therefore place more than the requisite $5 million in controversy. The jurisdictional amount-in-controversy requirement is met, and removal to this Court is proper under CAFA.

**III. THIS COURT HAS JURISDICTION AND REMOVAL TO THIS COURT IS PROPER**

37. Based on the foregoing facts and allegations, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).

38. The United States District Court for the Eastern District of California is the federal judicial district in which the Kern County Superior Court sits. This action was originally filed in the Kern County Superior Court, rendering venue in this federal judicial district and division proper. 28 U.S.C. §§ 84(c), 1441(a).

39. True and correct copies of the (a) Summons, (b) Class Action Complaint, (c) Civil Case Cover Sheet, (d) Notice of Assignment to Judge for All Purposes and Notice of Order to Show Cause Re CRC Rule 3.110 and Notice of Case Management Conference, and (e) Notice of Service of Process Transmittal are attached as Exhibits A–E to the Declaration of Katherine V.A. Smith filed concurrently here. *See also id.*, ¶ 8, Ex. F. These filings constitute "all process, pleadings, and orders served upon" Amazon in this action. 28 U.S.C. § 1446(a).

40. Upon filing the Notice of Removal, Amazon will furnish written notice to Plaintiffs' counsel, and will file and serve a copy of this Notice with the Clerk of the Kern County Superior Court, pursuant to 28 U.S.C. § 1446(d).

Dated:  April 21, 2021

KATHERINE V.A. SMITH
LAUREN M. BLAS
HELEN AVUNJIAN
KATIE M. MAGALLANES
GIBSON, DUNN & CRUTCHER LLP

By: */s/ Katherine V.A. Smith*
       Katherine V.A. Smith

Attorneys for Defendant
AMAZON.COM SERVICES LLC